Richard F. Ensor (10877)
YOUNG, HOFFMAN, STRASSBERG & ENSOR, LLP
170 S. Main Street, Suite 1125
Salt Lake City, Utah  84101
Phone: (801) 359-1900
Facsimile: (801) 359-1980
E-Mail: ensor@yahlaw.com

Dawn E. McFadden (*admitted pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Phone: (216) 586-3939

Counsel for Defendant Experian Information Solutions, Inc.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RAY BIRMINGHAM**, <br><br> *Plaintiff*, <br><br> v. <br><br> **EQUIFAX, INC.; et al.,** <br><br> *Defendants.* | EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT <br><br> **Civil No.** 2:06-cv-00702 BSJ <br><br> **Judge Bruce S. Jenkins** <br><br> **HEARING REQUESTED** |

## EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ............................... 2

        A.      The Credit Reporting Process ................................................................. 2

        B.      Plaintiff's Relationship with Verizon .................................................... 6

        C.      Facts Regarding Plaintiff's Claims Against Defendant Experian ........ 7

III.    STANDARD FOR SUMMARY JUDGMENT ................................................ 8

IV.     ARGUMENT ..................................................................................................... 9

        A.      Experian Employed Reasonable Procedures As A Matter of Law ....... 9

        B.      Experian Cannot Be Liable For Damages When It Had No Notice Of The
                Alleged Inaccuracy and Experian's Procedures Requiring Sufficient
                Identifying Information Were Reasonable ........................................... 12

                1.      Plaintiff Has Provided No Evidence of a January 2005 Dispute To
                        Experian ...................................................................................... 13

                2.      Experian Had No Duty To Reinvestigate The Verizon Accounts
                        Based On Plaintiff's July 20, 2005 Letter ................................. 15

                3.      Plaintiff Has Provided No Evidence Of Experian Providing Results
                        Of A Reinvestigation In August 2005 ....................................... 16

                4.      Plaintiff Has Produced No Evidence Of Any Other Disputes to
                        Experian ...................................................................................... 17

        C.      Plaintiff's Causes Of Actions For Negligence, Defamation And Invasion
                Of Privacy Fail As Well ....................................................................... 19

        D.      Plaintiff's Eighth Cause Of Action For Injunctive Relief Fails As A Matter
                Of Law And Fails Because It Is Moot ................................................. 20

        E.      Plaintiff Has Proved No Violation Of The Utah Consumer Sales Practices
                Act ........................................................................................................ 21

        F.      Plaintiff Has Provided No Evidence Of Compensable Damages Nor Of A
                Causal Link Between His Professed Damages And Experian's Reporting
                Of The Verizon Account ...................................................................... 21

                1.      New Century Mortgage ............................................................. 24

                2.      Ameriquest Mortgage ................................................................ 24

                3.      Bank of America Mortgage ....................................................... 24

                4.      Countrywide Home Equity ........................................................ 25

                5.      Ken Garff Auto Sales Loan ....................................................... 25

# TABLE OF CONTENTS
(continued)

**Page**

6.    Chrysler Credit Auto Loan.................................................................. 26

7.    GMAC Credit Card.......................................................................... 27

8.    Wachovia Credit Card....................................................................... 27

9.    Credit Opportunities......................................................................... 28

G.    Plaintiff Cannot Substantiate Any Damages For Emotional Distress ................ 28

H.    Plaintiff's Claim For Punitive Damages Fails As A Matter Of Law.................. 30

V.    CONCLUSION................................................................................. 31

## I.       INTRODUCTION

Plaintiff Ray Birmingham ("Plaintiff") claims that from early 2004 through most of 2005 he tried to convince Verizon[1] that two fraudulent mobile phone accounts had been opened in his name, and that he was not responsible for those accounts.  Plaintiff also claims that he disputed these accounts with all three of the defendant credit reporting agencies from late 2004 through 2005.  Plaintiff has produced evidence of only one letter sent to Defendant Experian Information Solutions, Inc. ("Experian") during that time period to dispute any accounts.  He also produced evidence of Experian properly responding with a letter asking Plaintiff to provide sufficient identifying information so that Experian could begin a reinvestigation.  Plaintiff never responded to the Experian letter and has provided no evidence that he ever attempted to contact Experian again to dispute any item on his credit report.

The Amended Complaint alleges a laundry list of claims against Experian.  All of Plaintiff's claims fail as a matter of law for lack of evidentiary support:  (1) Plaintiff's Second Causes of Action[2] for violation of Sections 1681e(b) of the Fair Credit Reporting Act ("FCRA") fails because Plaintiff cannot adduce any facts to establish that Experian did not follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information; (2) Plaintiff's Third Cause of Action for violation of Section 1681i(a) of the FCRA fails because Experian had no duty to reinvestigate when Plaintiff failed to provide sufficient identification to initiate an reinvestigation; (3) Plaintiff's Fourth, Fifth, Sixth and Seventh Causes of Action for Negligence, Defamation, and Invasion of Privacy fail because Plaintiff does not have evidence

---

[1] Plaintiff has sued a number of "Verizon" defendants in this action, and it is still unclear if the correct entity has been named.  For the purpose of this memo, Experian use of the term "Verizon" to refer to the Verizon entity that was reporting Plaintiff's account to Experian, Cellco Partners.

[2] Plaintiff's first cause of action is not alleged against Experian.

that Experian acted with malice or willful intent to injure him, (4) Plaintiff's Eighth Cause of

Action for Injunctive Relief requiring Experian to reinvestigate and correct the disputed

information fails as a matter of law because injunctions are not available to consumers under the

FCRA and because the claim is moot because Experian is no longer reporting the Verizon

accounts on Plaintiff's credit report; (5) Plaintiff's Ninth Cause of Action for violation of the

Utah Consumer Sale Practices Act ("UCSPA") fails because Plaintiff has produced no facts or

evidence that Experian's actions violated the UCSPA; and (6) all of Plaintiff's claims fail

because Plaintiff has no evidence that Experian caused his alleged damages.  Experian therefore

moves for summary judgment on each of Plaintiff's claims.  Experian also moves for summary

judgment on Plaintiff's claim for punitive damages because Plaintiff has no evidence that

Experian engaged in any willful conduct that violated the FCRA.  As Plaintiff cannot establish a

prima facie case nor present any material issue of fact, Experian respectfully requests that this

Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims against Experian

with prejudice.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The Credit Reporting Process

1.    Experian is a consumer credit reporting agency as defined by the FCRA.  As such

it maintains credit data on various consumers, including Plaintiff.  (Declaration of Kimberly

Hughes of Experian ("Hughes Decl.") ¶ 3, Ex. 1.)

2.    Experian receives and stores credit information originated by others and makes

that information available to parties engaged in credit related transactions.  (*Id*.; Declaration of

Kathleen M. Centanni ("Centanni Decl.") ¶ 3, Ex. 2.)

3.      Experian does not originate or create any credit information and Experian does not make loans or decide who should receive credit.  (Hughes Decl. ¶ 3, Ex. 1; Centanni Decl. ¶ 3, Ex. 2.)  Both of those functions are handled entirely by the credit granting industry, over which Experian has no control.  (Hughes Decl. ¶ 3, Ex. 1; Centanni Decl. ¶ 3, Ex. 2.)

4.      Experian essentially acts as a storehouse of credit information by storing, retrieving and furnishing data as allowed by the FCRA.  (Hughes Decl. ¶ 4, Ex. 1; Centanni Decl. ¶ 4, Ex. 2.)  Credit grantors report to Experian credit information identified as "trade lines," which consist of credit account information such as account number, account payment status and balance information.  (Hughes Decl. ¶ 4, Ex. 1; Centanni Decl. ¶ 4, Ex. 2.)

5.      After the credit data is received by Experian and before it is added to a consumer's credit file, the information is subjected to rigorous quality control and statutory compliance procedures to ensure that only accurate information is reported.  (Hughes Decl. ¶ 5, Ex. 1; Centanni Decl. ¶ 5, Ex. 2.)  Automated procedures are designed to make certain that no information that would violate the prescriptions of the FCRA or similar state statutes will be reported on any consumer's credit report.  *Id.*  A "credit report" is a compliation of credit information given to a credit grantor for the purpose of evaluating a consumer's credit.  In contrast, when a consumer seeks access to his or her credit information directly from a credit reporting agency, the resulting document is called a "consumer disclosure." *Id.*

6.      Experian has extensive procedures for assuring the maximum possible accuracy of reported credit information.  These procedures include (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and

refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information that Experian reports; and (4) working with consumers to proactively prevent errors in consumer credit reports.  (Hughes Decl. ¶ 6, Ex. 1; Centanni Decl. ¶ 6, Ex. 2.)

7.     Moreover, with the increase of consumer fraud and identity theft, Experian has implemented a series of policies and procedures designed to protect against consumer fraud. (Hughes Decl. ¶ 6, Ex. 1; Centanni Decl. ¶ 6, Ex. 2.)  Included in these procedures is the requirement that sufficient identifying information be provided to Experian before it will take any action regarding a consumer's file, whether the action is requested by a consumer, creditor or public agency.  (Hughes Decl. ¶ 6, Ex. 1; Centanni Decl. ¶ 6, Ex. 2.)

8.     Experian has developed detailed procedures to assure maximum possible accuracy.  (Centanni Decl. ¶ 7, Ex. 2.)  These include the procedures followed for the processing of information reported to Experian by creditors.  *Id.*  In order to report credit information to Experian, a credit grantor must pass a thorough membership due diligence process and execute appropriate contracts.  Experian only accepts consumer credit information from sources that it considers to be reliable reporters of such information.  *Id.*  Additionally, Experian has also built into its computer system an extensive range of checks and balances that are designed to detect as many potential errors as possible.  *Id.*  These checks detect anomalies by creating individual credit grantor profiles depicting how individual lenders have reported data to Experian over the prior three months.  *Id.*

9.     On a daily basis Experian receives in excess of fifty million new accounts or updates.  *Id.* at ¶ 8.  Of necessity, Experian's validation of consumer credit information is unable to extend to conducting an independent review with respect to each account being reported; nor

is it required to under the FCRA.  *Id.*

10.     Experian has developed detailed procedures for providing consumers with access to their Experian credit files and a means to dispute those items with which they disagree. (Hughes Decl. ¶ 7, Ex. 1; Centanni Decl. ¶ 9, Ex. 2.)  Experian has a toll-free number so that consumers can ask questions, request a personal credit report and/or request an investigation of their credit report.  (Centanni Decl. ¶ 9, Ex. 2.)  Experian implemented several procedures designed to involve the consumers who are the subjects of the credit reports produced by Experian in the overall process that assures the maximum possible accuracy of such reports.  *Id.*

11.     Consumers who disagree with the accuracy or completeness of any item of information can dispute those items directly with Experian, pursuant to the FCRA.  (Hughes Decl. ¶ 8, Ex. 1; Centanni Decl. ¶ 9, Ex. 2.)

12.     When a consumer provides sufficient identification information to Experian along with a dispute of items on their credit report, Experian begins an investigation.  (Hughes Decl. ¶ 9, Ex. 1; Centanni Decl. ¶ 10, Ex. 2.)

13.     Experian's system was developed to track each time that a consumer who provides the necessary identification requests a copy of their consumer file or disputes an account, whether that request is by phone, via the internet or by mail.  (Hughes Decl. ¶.5, Ex. 1; Centanni Decl. ¶ 10, Ex. 2.)

14.     Experian does not have access to creditors' records.  (Centanni Decl. ¶ 11, Ex. 2.) Thus, after receiving consumer disputes including the necessary identifying information, Experian generally reinvestigates disputed information by contacting the furnishers who reported it, explaining the consumer's dispute, and asking for a response concerning the accuracy of the

information.  (Hughes Decl. ¶ 9, Ex. 1; Centanni Decl. ¶ 10, Ex. 2.)

15.     Experian sends the furnisher, *i.e.*, the creditor, a "Consumer Dispute Verification."  (Hughes Decl. ¶ 9, Ex. 1; Centanni Decl. ¶ 10, Ex. 2.)  Experian sends the Consumer Dispute Verification form manually (a "CDV") or electronically (an automated CDV, or "ACDV").  (Hughes Decl. ¶ 9, Ex. 1; Centanni Decl. ¶ 10, Ex. 2.)  The CDV or ACDV provides the creditor with the consumer's identifying information as well as the basis of his dispute and requires the creditor to research the information it is currently reporting to Experian. (Hughes Decl. ¶ 9, Ex. 1; Centanni Decl. ¶ 10, Ex. 2.)

16.     The creditor returns the CDV or ACDV to Experian, providing Experian with instructions to leave the item as it is (because it was "verified as reported"), to delete the item, or to change it in some specified manner.  (Hughes Decl. ¶ 9, Ex. 1; Centanni Decl. ¶ 10, Ex. 2.) Experian acts accordingly and then sends the consumer a statement reflecting the results of the reinvestigation.  (Hughes Decl. ¶¶ 9, 10, Ex. 1; Centanni Decl. ¶¶ 10, 12, Ex. 2.)

17.     Experian's system tracks every time that a consumer who provides the necessary identification requests a copy of their consumer file or disputes an account, whether that request is by phone, via the internet or by mail.  (Hughes Decl. ¶ 9, Ex. 1; Centanni Decl. 10¶, Ex. 2.)

**B.     Plaintiff's Relationship with Verizon**

18.     Plaintiff admits that he authorized two Verizon accounts to be opened in his name.  One account was for his own use and one for the use of his nephew.  (Amended Complaint ¶¶ 24-25 (Doc. 2).)

19.     Plaintiff claims that sometime in or about October 2003 two fraudulent Verizon accounts were opened in his name.  (02/14/2008 Dep. of Ray Birmingham ("Birmingham

02/14/2008 Dep.") (Ex. 3) at 131:12-24.)

20.     In or about April 2004 Plaintiff sent checks to Verizon to pay the early

termination fee for the accounts he had opened for himself and his nephew.  (Amended

Complaint ¶ 35 (Doc. 2); Birmingham 02/14/2008 Dep. at 83:13-84:19.)

     **C.     Facts Regarding Plaintiff's Claims Against Defendant Experian**

21.     Plaintiff's claims against Experian stem from Experian's reporting of two

accounts with Verizon.  The history of Plaintiff's interactions with Experian is detailed as

follows.

22.     Experian's system has records of Plaintiff providing the necessary identification

information and requesting a copy of his consumer disclosure on November 23, 1998, October

20, 2000, December 1, 2003 and May 3, 2006.  (Hughes Decl. ¶¶ 12, 13, 14, 29, Ex. 1; Centanni

Decl. ¶ 13, 14, 15, 28, Ex. 2.)

23.     Experian sent Plaintiff a copy of his requested consumer disclosure on November

23, 1998, October 20, 2000, December 1, 2003 and May 3, 2006.  (Hughes Decl. ¶ 2, 13, 14, 27,

Ex. 1; Centanni Decl. ¶ 13, 14, 15, 30, Ex. 2.)

24.     Experian has no record of Plaintiff ever disputing any information from his credit

file.  (Hughes Decl. ¶ 25, Ex. 1; Centanni Decl. ¶ 26, Ex. 2.)

25.     Plaintiff has produced a letter dated July 20, 2005, which he allegedly sent to

Experian.  This letter does not provide sufficient identification information to allow Experian to

confirm the sender's identity and start an investigation pursuant to Experian's reasonable policies

and procedures.  (Hughes Decl. ¶ 21, 22, Ex. 1; Centanni Decl. ¶¶ 22, 23, Ex. 2.)

26.     The July 27, 2005 Experian Letter that Plaintiff has produced instructed Plaintiff

as to the types of identification that are necessary for Experian to begin a reinvestigation and how a consumer can request a copy of his disclosure or dispute an item in his file.  (Hughes Decl. ¶¶ 23, 30, 31, Ex. 1; Centanni Decl. ¶ 23, 31, 32, Ex. 2.)  This is the type of letter that Experian sends to a consumer who has sent a request to Experian to dispute an account or request a copy of his consumer file, if the consumer has not provided the necessary identification.

## III.    STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, where there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A nonmoving party may not simply rely on unsupported allegations without "'any significant probative evidence tending to support the complaint.'"  *White v. York Int'l Corp.*, 45 F. 3d 357, 360 (10th Cir. 1995) (quoting *Anderson*, 447 U.S. at 249).  "Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment."  *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (quoting *Elsken v. Network Multi-Family Sec. Corp.*, 49 F.3d 1470, 1476 (10th Cir. 1995).  Summary judgment is appropriate where the nonmoving party presents evidence that is "merely colorable or is not significantly probative."  *Anderson*, 447 U.S. at 249-50 (internal citations omitted).  Indeed, the non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citation omitted).

## IV.   ARGUMENT

### A.   Experian Employed Reasonable Procedures As A Matter of Law

Experian is entitled to summary judgment on all of Plaintiff's claims because Plaintiff

cannot adduce any facts to establish that Experian did not follow reasonable procedures to assure

maximum possible accuracy of Plaintiff's credit information.  The FCRA requires that:

"[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable

procedures to assure maximum possible accuracy of the information concerning the individual

about whom the report relates."  15 U.S.C. § 1681e(b).  Congress recognized that "total accuracy

in consumer reports is not a realistic objective."  *Equifax Inc. v. FTC*, 678 F.2d 1047, 1048-49

(11th Cir. 1982).  Thus, section 1681e(b) does not impose strict liability for any inaccurate credit

report, but only a duty of reasonable care in preparation of the report.  *See Cahlin v. General*

*Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Sepulvado v. CSC Credit Serv.,*

*Inc.*, 158 F.3d 890, 896 (5th Cir. 1998).  To make out a prima facie claim under § 1681e(b) of the

FCRA, Plaintiff must establish that (1) there was inaccurate information on his consumer credit

report; (2) the inaccuracy was due to Experian's failure to follow reasonable procedures to

ensure the maximum possible accuracy of its credit reports; (3) he suffered actual damages; and

(4) those damages were caused by the inaccuracy.  *Cahlin*, 936 F.2d at 1156-161.

As set forth above, Plaintiff's claim under § 1681e(b) is doomed because Experian's

procedures were reasonable as a matter of law.  The standard for evaluating the reasonableness

of a credit reporting agency's procedures is "what a reasonably prudent person would do under the circumstances." *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986), *cert. denied*, 483 U.S. 1022 (1987) (quotation omitted); *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994).  In assessing the reasonableness of a credit reporting agency's procedures, the potential harm from inaccuracy must be weighed against the burden of safeguarding against such inaccuracy.  *Ruffin-Thompkins v. Experian Info. Sys, Inc.*, No. 03 C 683, 2003 U.S. Dist. LEXIS 23647, at *11 (N.D. Ill. Dec. 31, 2003) (quotation omitted) (attached as Ex. 4).  Whether a credit reporting agency has complied with the requirement of adopting reasonable procedures to assure maximum possible accuracy may be decided on a motion for summary judgment where, as here, "the reasonableness of the procedures used by the consumer reporting agency is beyond question." *Lee v. Experian Info. Solutions*, No. 02 C 8424, 2003 U.S. Dist. LEXIS 17420, at *9 (N.D. Ill. Oct. 1, 2003) (granting Experian's motion for summary judgment where Plaintiff did not raise a genuine issue of material fact as to any element for a § 1681e(b) claim) (attached as Ex. 5); *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *9-14 (same) (attached as Ex. 4).

Experian has extensive procedures for assuring maximum possible accuracy of reported credit information.  Indeed, before any creditor information is placed in a consumer's file, Experian subjects the information to rigorous quality control and statutory compliance procedures.  These procedures include:  (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of

information that Experian reports; and (4) working with consumers to proactively prevent errors in consumer reports.  (Centanni Decl ¶ 6, Ex. 2; Hughes Decl. ¶¶ 5-6, Ex. 1.)

Experian has also implemented several additional computer safeguards and procedures to assure the maximum possible accuracy of the credit information it reports.  These include the procedures followed for the processing of information reported to Experian by creditors. (Centanni Decl. ¶ 7, Ex. 2.)  In order to report credit information to Experian, a credit grantor must pass a thorough membership due diligence process and execute appropriate contracts. (Centanni Decl. ¶ 7, Ex. 2.)  Experian only accepts consumer credit information from sources that it considers being reliable reporters of such information.  *Id.*  Additionally, Experian has built into its computer system an extensive range of checks that are designed to detect as many potential errors as possible.  *Id.*  These checks include the creating of individual profiles reflecting how individual lenders have reported over the most recent prior three months and comparing such profile against the most recently received report of credit information from the creditors in order to detect anomalies.  *Id.*  Of necessity, Experian's validation of consumer credit information, is unable to extend to conducting an independent verification with respect to each account being reported, nor is it required to under the FCRA.  *Id.* at ¶ 8.  In excess of fifty million new accounts or updates are reported each day to Experian.  *Id.*

In addition, the reasonableness of Experian's procedures is demonstrated by the fact that Experian had no objective indication that the information received from Verizon was unreliable. It is undisputed that credit reporting agencies satisfy the reasonable procedures requirement imposed under the FCRA when they rely on information received from a credit grantor and have no reason to doubt the accuracy of that information.  *See Swoager v. Credit Bureau of Greater*

*St. Petersburg, Fla.*, 608 F. Supp. 972, 975 (M.D. Fla. 1985).  *See also* 16 C.F.R. Part 600, App. at 508 (1997) ("The section does not require error free consumer reports.  If a consumer reporting agency accurately transcribes, stores, and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate.")  Thus, courts have held that a credit reporting agency is excused from independently verifying information provided by creditors unless the agency had prior knowledge that the information might be inaccurate or that the source is unreliable.  *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 2367, at *11 (attached as Ex. 4).

In preparing Plaintiff's credit reports, Experian relied solely on information provided to it by reliable credit grantors and furnishers, *i.e.*, Verizon.  (Hughes Decl. ¶ 3, Ex. 1.)  Experian had no reason to doubt the accuracy of the information that it was reporting with respect to Plaintiff's Verizon accounts.  Accordingly, summary judgment must be granted in favor of Experian on Plaintiff's § 1681e(b) claim.  *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 2367, at *12 (attached as Ex. 4); *Lee*, 2003 U.S. Dist. LEXIS 17420, at *10 (attached as Ex. 5).

**B.     Experian Cannot be Liable for Damages When It Had No Notice of the Alleged Inaccuracy and Experian's Procedures Requiring Sufficient Identifying Information Were Reasonable**

Because the FCRA is not a strict liability statute, Experian cannot be liable for inaccuracies of which it has no notice.  *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 474 (2d Cir. 1995) ("Prior to being notified by consumer, a credit reporting agency generally has no duty to reinvestigate credit information"); *see also Henson v. CSC Credit Serv.*, 29 F.3d 280, 285 (7th Cir. 1994) (holding that a credit reporting agency is not liable for reporting

inaccurate information absent prior notice from the consumer that the information may be inaccurate).[3]

While Plaintiff has alleged that he disputed the Verizon accounts to Experian on multiple occasions, he has produced evidence of only one communication to Experian about the Verizon accounts, the July 20, 2005 letter.  He has failed to produce any credible evidence of his making any other disputes of the Verizon accounts to Experian.

1.  **Plaintiff Has Provided No Evidence of a January 2005 Dispute To Experian**

Plaintiff's Amended Complaint alleges that in January of 2005 "Plaintiff sent, and Experian received, a dispute in which Plaintiff disputed the appearance in his Experian credit file of the false Verizon derogatory account."  (Amended Complaint ¶ 50 (Doc. 2).)  Plaintiff also alleged that "[i]n February of 2005 Experian responded by advising Plaintiff that Experian had investigated Plaintiff's dispute and confirmed that the Verizon Wireless account was correct."  *Id.* at ¶ 51.  This allegation is simply untrue.  If Plaintiff had sent a dispute letter and that letter caused Experian to reinvestigate the Verizon account being reported in plaintiff's credit file, Experian would have a record of having received the letter, Experian's reinvestigation and the results of the reinvestigation being sent to Plaintiff.  (Hughes Decl. ¶¶ 5, 9, 20, 25, Ex. 1; Centanni Decl. ¶¶ 10, 21, 26, Ex. 2.)  Experian has <u>no record</u> of receiving a dispute from Plaintiff in January in 2005, of conducting a reinvestigation of Plaintiff's Verizon accounts, or of sending the results of any investigation to plaintiff.  (Hughes Decl. ¶¶ 20, 25, Ex. 1; Centanni Decl. ¶¶ 21, 26, Ex. 2.)

---

[3] *See also Lee*, 2003 U.S. Dist. LEXIS 17420, at *10 (finding no FCRA liability based on credit report issued before Experian notified of potential inaccuracy on consumer's file) (attached as Ex. 5); *Whelan*, 862 F. Supp. at 830 (court deemed plaintiff's section 1681e(b) claim "fatal" because the credit reporting agency was not notified by the consumer of the inaccurate information).

Plaintiff admits that does not have a copy of what he alleges he sent Experian in January of 2005.  (Birmingham 02/14/2008 Dep. at 144:07-20.)  He also admits that he does not have any evidence of the reinvestigation results that he alleges Experian sent him in February 2005  (*Id.* 146:21-147:11; 03/31/2008 Dep. of Ray Birmingham ("Birmingham 03/31/2008 Dep.") (Ex. 6) at 133:06-134:05.)  Experian has no record of receiving a dispute, conducting a reinvestigation or sending reinvestigation results, either.  (Hughes Decl. ¶¶ 5, 9, 20, 25, Ex. 1; Centanni Decl. ¶¶ 10, 21, 26, Ex. 2.)

Experian's only record of a communication being sent to Plaintiff in January of 2005 is a letter dated January 21, 2005.  (Hughes Decl. ¶¶ 17, 20, Ex. 1; Centanni Decl. ¶ 19, 21, Ex. 2; January 21, 2005 Experian Letter to Plaintiff ("January 21, 2005 Experian Letter") (Ex. 7)).)  The January 21, 2005 Experian Letter notified plaintiff that Experian had placed an Initial Security Alert on his credit file as requested on his behalf by another credit reporting agency. (January 21, 2005 Experian Letter") (Ex. 7) at 1.  The letter notified Plaintiff that Experian had also removed his name and address from its prescreened offer mailing list for six months and informed him that if he wanted a free copy of his credit report he could obtain one by visiting Experian's secure website.  The letter also informed Plaintiff that if he wanted to write to Experian by mail, that he would need to send his full name, previous addresses for the past two years, his Social Security number, date of birth and two proofs of his current address.  *Id.*  The January 21, 2005 Experian letter also provided Plaintiff with information about identity theft and further steps he could take to recover from identity theft, including adding an extended alert to his credit file.  *Id.*  Plaintiff has no recollection of responding to Experian's January 21, 2005 letter.  (Birmingham 02/14/2008 Dep. at 142:21-144:06 (Ex. 3).)

2.     **Experian had No Duty to Reinvestigate the Verizon Accounts based on Plaintiff's July 20, 2005 Letter**

Plaintiff has produced evidence that he sent a letter to Experian dated July 20, 2005 that referenced the Verizon accounts.  (Plaintiff's July 20, 2005 Letter (Ex. 8).)  Experian had no duty, however, to reinvestigate the Verizon accounts based on that letter because Plaintiff's July 20, 2005 letter failed to provide Experian with sufficient identification to initiate a reinvestigation.  Plaintiff failed to fulfill his obligation of providing Experian with enough information to investigate his dispute.  Plaintiff did not include his Social Security number or other necessary identification information in his July 20, 2005 letters to Experian.  (Plaintiff's July 20, 2005 Letter (Ex. 8).)  The FCRA requires that consumers provide credit reporting agencies with sufficient information in order to have disputed items reinvestigated.  A consumer reporting agency may terminate a reinvestigation upon a reasonable determination that the dispute by the customer is frivolous or irrelevant – "including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information."  15 U.S.C. § 1681i(a)(3)(A); *Anderson v. Trans Union*, 405 F. Supp. 2d 977, 983 (W.D. Wis. 2005) (granting summary judgment where plaintiff failed to provide sufficient identification).  Because Plaintiff did not provide Experian such necessary information in his purported dispute letter, Experian could not access his file to begin a reinvestigation.  (Hughes Decl. ¶¶ 21, 30, Ex. 1; Centanni Decl. ¶¶ 22, Ex. 2.)

In accordance with Experian's established procedures, Experian notified Plaintiff on July 27, 2005, that he needed to provide proper identification as required by the FCRA, particularly his Social Security number, for Experian to reinvestigate his dispute.  (Hughes Decl.¶¶ 22, 23,

Ex. 1; Centanni Decl. ¶¶ 23, 24, Ex. 2; July 27, 2005 Experian Letter (Ex. 9).)  The identification

requested in the July 27, 2005 Experian Letter was the same information that Experian asked

Plaintiff to provide when writing to Experian in the January 21, 2005 Experian Letter.  (*See*

"January 21, 2005 Experian Letter") (Ex. 7).  Such response is reasonable as a matter of law,

where as here, Plaintiff failed to provide sufficient identification for Experian to initiate an

investigation of Plaintiff's dispute.  *Sarver v. Experian Info. Solutions, Inc.*, 299 F. Supp. 2d 875,

877 (N.D. Ill. 2004) (Experian's request for additional information where plaintiff had provided

his full name and address but had failed to include his Social Security number in his dispute was

reasonable as a matter of law).  Experian never received any response from Plaintiff to the July

27, 2005 Experian letter (Hughes Decl. ¶ 24, Ex. 1; Centanni Decl. ¶¶ 25, Ex. 2) and Plaintiff has

no recollection of responding to the letter (Birmingham 02/14/2008 Dep. at 152:17-156:08 (Ex.

3)).  Courts have held that "it is understandable that a name and address alone would be

insufficient [identifying information], and that relying exclusively on those two items would

create a high probability of misidentification."  *Bentley v. Providian Fin. Corp.*, No. 02 Civ.

5714, 2003 WL 22234700, *5 (S.D.N.Y. Apr. 21, 2003) (attached as Ex. 10).  Given the duty

under the FCRA "to follow reasonable procedures to insure both the accuracy *and* confidentiality

of plaintiff's credit information, defendant's prompt decision to confirm plaintiff's social

security number was both reasonable and prudent."  *Anderson*, 405 F. Supp. 2d at 984.

3.   **Plaintiff Has Produced No Evidence of Experian Providing Results of a
Reinvestigation in August 2005**

Plaintiff's Amended Complaint further alleges that in "[i]n August of 2005 Experian

responded [to Plaintiff's July 20, 2005 letter] by again sending investigation results to Plaintiff

indicating that the Verizon accounts had been 'verified,' and that 'no change' would be made."
(Amended Complaint at ¶ 53 (Doc. 2).)  Like Plaintiff's other allegations, this is simply untrue.
Because Plaintiff's July 20, 2005 letter did not provide sufficient identification information,
Experian was unable to begin an investigation, and instead sent Plaintiff the July 27, 2005
Experian Letter asking for complete identifying information.  Because Plaintiff did not provide
sufficient identification information in his July 20, 2005 letter, Experian's databases show no
record of a dispute being made, of a reinvestigation of the Verizon accounts being conducted, or
of the results of a reinvestigation being sent to Plaintiff.  (Hughes Decl. ¶¶ 25, 26, Ex. 1;
Centanni Decl. ¶¶ 26, 27, Ex. 2.)  As with Plaintiff's claim regarding his alleged January 2005
dispute, Plaintiff admits that he does not have any evidence of the reinvestigation results that he
alleges Experian sent him in August 2005.  (*Id.*; Birmingham 02/14/2008 Dep. at 163:22-164:20
(Ex. 3); Birmingham 03/31/2008 Dep. at 137:02-11 (Ex. 6).)  Neither does Experian.  (Hughes
Decl. ¶¶ 25, 26, Ex. 1; Centanni Decl. ¶¶ 26, 27, Ex. 2.)

       4.      **Plaintiff Has Produced No Evidence of Any Other Disputes to Experian**

In addition to the two disputes to Experian that Plaintiff has alleged in his Amended
Complaint, Plaintiff also alleged at his depositions and in his responses to Experian's
interrogatories that he disputed the Verizon accounts to Experian through Experian's website on
multiple occasions.  (Birmingham 03/31/2008 Dep. at 182:19-22 (Ex. 6); Plaintiff's Response to
Experian's Interrogatory No. 11 (mislabeled as "Plaintiff's Response to Experian's Requests to
Admit") (Ex. 11).)  Plaintiff has, however, provided no evidence of these online disputes.
Plaintiff has claimed he was unable to print copies of the alleged online disputes.  (Birmingham
02/14/2008 Dep. at 142:24-143:15 (Ex. 3).)  Further, in addition to being unable to provide

evidence of any alleged online disputes, he could also provide no specific information about these alleged online disputes:

> Q: Do you have any specific recollections of when you disputed something online to Experian?
>
> A: No.  I stated No.
>
> Q: Okay.  You stated earlier that you believe when you disputed [to] one [credit reporting agency] online you disputed [to] all online; is that correct?
>
> A: Yes.
>
> Q: But you don't have any specific recollections of when you did any disputes to Experian.
>
> A: No, I don't have any documents.
>
> Q: Or do you have any recollections without a document?
>
> A: Yeah.  I recollect that I called usually about every six months.
>
> Q: . . . Do you have a specific recollection of when you did an online dispute?
>
> A: Do you mean like a specific date?
>
> Q: A specific date, a specific . . . week, a specific month.
>
> A: No . . . I don't.

(Birmingham 03/31/2008 Dep. at 189:08-190:06 (Ex. 6).)

Experian does have records of Plaintiff contacting Experian on three occasions by phone to request a copy of his consumer disclosure: once on November 23, 1998; once on October 20, 2000 and once on December 1, 2003.  (Hughes Decl. ¶¶ 12, 13, 14, Ex. 1; Centanni Decl. ¶¶ 13, 14, 15, Ex. 2.)  Experian also has record of Plaintiff contacting Experian once through the internet to request a copy of his consumer disclosure on May 3, 2006.  (Hughes Decl. ¶ 29, Ex. 1; Centanni Decl. ¶ 30, Ex. 1.)  If Plaintiff had ever disputed the Verizon account with Experian through the internet, he would have been required to provide sufficient identification information, and Experian would have a record of that dispute.  (Hughes Decl. ¶ 9, Ex. 1; Centanni Decl. ¶ 10, Ex. 2.)  Experian has no record of Plaintiff ever contacting Experian online to dispute any account.  (*See* Hughes Decl. ¶ 25, Ex. 1; Centanni Decl. ¶ 26, Ex. 2.)  Plaintiff has provided no evidence of these online disputes, and in fact, Plaintiff can not recall a day, week, or

even a month when he believes he disputed the Verizon account online to Experian.

(Birmingham 03/31/2008 Dep. at 189:08-190:06 (Ex. 6).)

> **C.    Plaintiff's Causes of Actions for Negligence, Defamation and Invasion of Privacy Fail as Well.**

Plaintiff alleges negligence, defamation and invasion of privacy for publishing false and

derogatory information on his Experian credit report.  (Amended Complaint at ¶¶ 107-118 (Doc.

2).)  Experian holds a qualified immunity under the FCRA as to charges of negligence,

defamation and invasion of privacy which holds that "no consumer may bring any action . . . of

defamation, invasion of privacy, or negligence . . . except as to false information furnished with

<u>malice or willful intent</u> to injure such consumer."  15 U.S.C. § 1681h(e) (emphasis added).  15

U.S.C. § 1681h(e).[4]  To avoid the qualified immunity and preemption under the FCRA, Plaintiff

must prove that Experian acted with "malice or willful intent to injure" him.  15 U.S.C.

§ 1681h(e); *see also Cousin v. Trans Union Corp.*, 246 F.3d 359, 375-76 (5th Cir. 2001); *see*

*also Whelan*, 862 F. Supp. at 833-34.  As the court in *Thornton v. Equifax, Inc* held:

> Actions or proceedings in the nature of defamation, invasion of privacy, or
> negligence with respect to the reporting of information, however, are specifically
> provided for in the Act and are limited by the Act in section 1681h(e).  If such
> actions are based on information disclosed pursuant to requirements of the Act, a
> consumer may not bring any such action or proceeding unless the relevant
> information is false and furnished 'with malice or willful intent to injure such
> consumer.'

619 F.2d 700, 703 (8th Cir. 1980).

To establish malice, Plaintiff must allege and provide proof demonstrating that the

reports compiled by Experian were made either "with knowledge that it was false or with

---

[4]    Experian also holds a qualified immunity under Utah state law as to claims of defamation.  *See, e.g., Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58-59 (Utah 1991) (recognizing common interest privilege).  For the reasons stated above, Plaintiff's cause of action for defamation is also barred by Experian's qualified immunity under the common interest privilege.

reckless disregard of whether it was false or not." *Id.* at 705 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964)).  Plaintiff's complaint does not even allege "malice or willful intent to injure" as to his negligence claim (Count IV) or first invasion of privacy claim (Count VI).  (Amended Complaint ¶¶ 107-109 & 115-116 (Doc. 2).)  To prove willfulness, Plaintiff carries the heavy burden of showing that Experian acted with reckless disregard.  *Safeco Ins. Co. of America v. Burr*, 127 S. Ct. 2201, 2216 (2007).  Plaintiff has failed to provide any such facts or evidence.  Accordingly, Plaintiff's Fourth, Fifth, Sixth and Seventh Cause of Actions fail as a matter of law.

> **D.    Plaintiff's Eighth Cause of Action For Injunctive Relief Fails as a Matter of Law Because Such Relief Is Not Available to Him and Fails Because the Claim is Moot**

In his Eighth Cause of Action, Plaintiff claims he is "entitled to an order commanding the defendants to reinvestigate and correct the credit reportings and other information maintained and published about plaintiff."  (Amended Complaint ¶¶ 119-121 (Doc. 2).)  This claim fails as a matter of law because injunctions are not available to consumers under the FCRA. *Washington v. CSC Credit Serv. Inc.*, 199 F. 3d 263, 268 (5th Cir. 2000) (holding that Congress vested the power to obtain injunctive relief as to the FCRA solely with the FTC).[5]

Plaintiff's claim for injunctive relief also is moot.  The only inaccuracies Plaintiff alleged in his Amended Complaint as being reported by Experian were the two Verizon Accounts. Those accounts are no longer being reported by Experian.  (Plaintiff's 08/29/2008 Experian Credit Disclosure (Ex. 12) (selected pages only).)  Accordingly, Plaintiff's Eighth Cause of Action both fails as a matter of law and is moot.

---

[5] *See also Ditty v. Checkrite, LTD.*, 973 F. Supp. 1320, 1338 (D. Utah 1997) (same); *Greene v. Capital One Bank*, Case No. 2:07-CV-687, 2008 U.S. Dist. LEXIS 33524, at *11-12 (D. Utah Apr. 23, 2008) (same).

**E.      Plaintiff Has Proved No Violation of the Utah Consumer Sales Practices Act**

Plaintiff's Ninth Cause of Action alleging violations of the Utah Consumer Sales Practices Act ("UCSPA") must fail because plaintiff has failed to plead any specific violation of the UCSPA and has failed to produce any evidence of a violation of the UCSPA.  *See* Utah Code Ann. § 13-11-4.  Plaintiff's Amended Complaint simply alleges that "[e]ach one of the Defendants' violations of FCRA and tortuous libel of Plaintiff constitutes a deceptive act or practice as that term is employed in the Utah Consumer Sales Practices Act."  (Amended Complaint ¶ 125 (Doc. 2).)  As demonstrated above, Plaintiff has failed to demonstrate that Experian has violated the FCRA; therefore, Plaintiff's UCSPA claims must fail.

**F.      Plaintiff Has Provided No Evidence of Compensable Damages Nor of a Causal Link Between His Professed Damages and Experian's Reporting of the Verizon Account**

Plaintiff's claims for damages against Experian cannot survive summary judgment for multiple reasons.  First, simply stated, credit denials resulting from inaccurate information on a credit report allegedly causing injury to a consumer are not recoverable, unless and until the credit reporting agency is put on notice of the inaccuracy by the consumer and fails to respond in accordance with the FCRA.  *Whelan*, 862 F. Supp. at 830.  Experian was never put on notice of the alleged errors on Plaintiff's Experian credit report because Plaintiff never adequately disputed the Verizon accounts to Experian.

Second, Plaintiff must demonstrate that he sustained an actual injury and that the injury was proximately caused by the negligence of Experian.  *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (requiring a showing of damages to sustain Plaintiff's claim under Section 1681e(b)); *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1160 (11th Cir.

1991) (affirming summary judgment for defendant on FCRA claim because plaintiff "utterly failed to produce any evidence tending to show that he was damaged" by an inaccurate credit report). Thus, Plaintiff must do more than simply prove that Experian failed to investigate a dispute about which he adequately notified Experian (which, as shown above, he has not done); he also has the affirmative duty of proving that the allegedly inaccurate information on that credit report was the cause of a denial of personal credit. *See Crabill*, 259 F.3d at 664 (affirming grant of summary judgment because "[w]ithout a causal relationship between the violation of the [FCRA] and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages'"). Where no actual damages have been caused by the credit reporting agency's reporting of the allegedly inaccurate information, there is no basis for assessing liability under the FCRA and judgment in favor of the credit reporting agency is appropriate. *Casella v. Equifax Credit Info. Serv.*, 56 F.3d 469, 475 (2d Cir. 1995) (affirming summary judgment in Section 1681i case in part because plaintiff failed to prove causation).[6]

As federal courts repeatedly have recognized, liability is not created for credit denials predating Experian's knowledge of an inaccuracy, hence none of the credit actions discussed above are compensable under the FCRA. *Henson v. CSC Credit Services*, 29 F.3d 280, 285 (7th Cir. 1994) (holding that a credit reporting agency is not liable for reporting inaccurate information absent prior notice from the consumer that the information may be inaccurate); *see also Lee v. Experian Info. Solutions*, No. 02 C 8424, 2003 U.S. Dist. LEXIS 17420, at *10 (N.D. Ill. Oct. 1, 2003) (finding no FCRA liability based on credit report issued before Experian was

---

[6] *See also Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 832 (E.D.N.Y. 1994) (granting summary judgment and finding that "[p]laintiffs have an affirmative duty of coming forward with evidence in support of their claim that they were caused damage due to TRW's alleged inaccurate report.")

notified of potential inaccuracy on consumer's file) (attached as Ex. 5); *Whelan*, 862 F. Supp. at 830 (court deemed plaintiff's § 1681e(b) claim "fatal" because the credit reporting agency was not notified of the inaccurate information).  Here Plaintiff has failed to produce any evidence of a credit denial or adverse action.

In this case, Plaintiff's claims are doomed because he can prove neither that he suffered any recoverable damages under the FCRA, nor that Experian caused any of his alleged harm. Even if Plaintiff had disputed the Verizon accounts to Experian, Plaintiff's claims are devoid of the requisite causal link.  While Plaintiff claims that Experian's reporting of the allegedly inaccurate information regarding the Verizon accounts has been a substantial factor in causing credit denials and other damages, (Plaintiff's Am. Compl., (Doc.2)), Plaintiff is simply unable to cite any credit denials that occurred as a result of the Verizon accounts, or more specifically, as a result of an Experian credit report containing the Verizon accounts.  (Birmingham 03/31/2008 Dep. at 109:13-15 (Q: . . . were there any instances where you sought credit but were denied?  A: Offhand I can't remember." (Ex. 6))  He has produced no letters indicating that he was denied credit.  Rather than citing to any actual credit denial, Plaintiff cites to interest rates he was offered that were higher than he *thought* he should have been offered, fees he would have been required to pay that he did not *think* he should have to pay, and requests for applications he *chose* not to complete because of *assumption*s he made.  He bases his claims of alleged damages on nothing more than his assumptions and his layman's knowledge of the credit industry.[7]  Further, several of his alleged denials occurred before he even claims to have put Experian on notice –

---

[7] While Plaintiff has offered no evidence that any of the alleged adverse actions were caused by an Experian credit report, other than his own assumptions, he admits that he has no personal experience working or being trained in the credit industry.  (Birmingham 03/31/2008 Dep. at 142:16-143:15.)

which he in fact never did.  Significantly, in every instance, Plaintiff was not able to offer any basis for his belief, other than his own assumptions, that the interest rate he was offered had anything to do with the Verizon accounts or his Experian credit report.

1.      New Century Mortgage

Plaintiff claims that he received a higher interest rate than he believes he should have received for mortgages he applied for through New Century Mortgage sometime in 2005. (Birmingham 02/14/2008 Dep. at 37:11-38:25; 42:18-22; 182:06-10 (Ex. 3).)  According to Plaintiff, New Century initially offered him an interest rate of 5.8 or 5.9 %, but then later offered him an increased rate of 6.4%.  *Id.* at 182:11-15.  Plaintiff admits that no one at New Century told Plaintiff that the increase in rate was because of any credit report, let alone an Experian credit report.  *Id.* at 182:16-21.  Plaintiff further admitted that he *assumes* that the reason the rate was increased was because of the Verizon accounts.  *Id.* at 182:22-183:04.

2.      Ameriquest Mortgage

Plaintiff claims that Ameriquest offered him a higher interest rate on a mortgage than he believes he should have been offered.  (Birmingham 02/14/2008 Dep. at 37:10-21 (Ex. 3); Birmingham 03/31/2008 Dep. at 111:09-23 (Ex. 6); Plaintiff's Response to Experian's Interrogatory No. 1 (Ex. 11).)  Plaintiff admitted that he did not have "any idea what they based their response on."  (Birmingham 02/14/2008 Dep. at 42:23-43:01 (Ex. 3).)

3.      Bank of America Mortgage

Plaintiff claims that he believes he was denied a mortgage at the interest rate he requested of 5.6% from Bank of America in 2005.  (Birmingham 02/14/2008 Dep. at 63:15-19 (Ex. 3); Birmingham 03/31/2008 Dep. at 113:21-114:12 (Ex. 6); Plaintiff's Response to

Experian's Interrogatory No. 1 (Ex. 11).)  Plaintiff is not sure when he applied for the mortgage

with Bank of America, and he has no paperwork from this loan that he "believes" he applied for.

(Birmingham 02/14/2008 Dep. at 63:15-19 (Ex. 3).)  Plaintiff admits that Bank of America did

not tell him that they did not offer him a 5.6% interest rate mortgage because of an Experian

credit report and that Plaintiff only assumes it was because of the Verizon accounts.  *Id* at

181:05-182:05.

       4.      Countrywide Home Equity

      Plaintiff claims that he applied for a home equity loan with Countrywide in October

2006.  (Birmingham 02/14/2008 Dep. at 73:23-75:10 (Ex. 3); Plaintiff's Response to Experian's

Interrogatory No. 1 (Ex. 11).)  According to Plaintiff, when he was notified that Countrywide

was going to charge $1500 in extra fees for closing costs, Plaintiff decided not to finish the

application for the loan.  (Birmingham 02/14/2008 Dep. at 73:23-5; 178:14-179:04 (Ex. 3).)

Plaintiff admits that no one at Countrywide told him the extra fees had anything to do with his

credit report and that he was assuming the fees were because of his credit report.  (*Id.*;

Birmingham 03/31/2008 Dep. at 191:24-192:11 (Ex. 6).)

> Q:    Did anyone at Countrywide tell you we are charging you additional fees
>        because of your credit report?
> A:    No.
> Q:    Then why do you assume that the credit report is the reason for the
>        additional fees?
> A:    *Why should I assume otherwise*?

(Birmingham 02/14/2008 Dep. at 75:04-10 (Ex. 3) (emphasis added).)

       5.      Ken Garff Auto Sales Loan

      Plaintiff claims that he discussed obtaining financing for a car loan in September 2006

with Ken Garff Auto Sales.  (Birmingham 02/14/2008 Dep. at 180:07-181:04 (Ex. 3); Plaintiff's

Response to Experian's Interrogatory No. 1 (Ex. 11).)  Plaintiff claims that Ken Garff Auto Sales

had initially told him about a lower interest rate than they were finally able to offer him.

(Birmingham 02/14/2008 Dep. at 180:07-181:04 (Ex. 3))  Plaintiff admits that no one at Ken

Garff Auto Sales told him the change in rate was because of a credit report, let alone an Experian

credit report, and that he has assumed it was because of the Verizon accounts.  *Id.*  Plaintiff

admits that he did not finish an application for a car loan at this time.  *Id.*

     6.     Chrysler Credit Auto Loan

     Plaintiff claims he was told by a dealer that he was not able to get a Chrysler Credit car

loan in December of 2003 and instead would have to go through Wells Fargo to get the loan.

(Birmingham 02/14/2008 Dep. at 175:01-176:17 (Ex. 3); Plaintiff's Response to Experian's

Interrogatory No. 1 (Ex. 11).)  Plaintiff admits that no one told him that he had to go through

Wells Fargo because of something on an Experian credit report; he admits he <u>assumed</u> it was

because of the Verizon accounts.  (Birmingham 02/14/2008 Dep. at 177:10-12; 180:07-181:04

(Ex. 3).)  When Plaintiff was told he would have to get his loan through another lender, he chose

not to finish his loan application.  *Id.* at 180:07-181:04.

     Plaintiff applied for this loan in December 2003, long before he claims, in his Amended

Complaint, to have disputed the Verizon account to Experian.  His Amended Complaint alleges

that he disputed the Verizon accounts to Experian in January and July of 2005.  (Amended

Complaint ¶¶ 50 & 52 (Doc. 2).)  Plaintiff further admitted that the Verizon accounts were not

being reported to Experian in December 2003.  (Birmingham 02/14/2008 Dep. at 132:15-135:22

(Ex. 3).)

7.     GMAC Credit Card

Plaintiff claims that when he applied for a GMAC credit card in or about September 2006, he was asked to provide additional information after he applied for the card because of some unspecified irregularities.  (Birmingham 02/14/2008 Dep. at 60:19-61:25 (Ex. 3); Birmingham 03/31/2008 Dep. at 10:21-14:08 (Ex. 6); Plaintiff's Response to Experian's Interrogatory No. 1 (Ex. 11).)  Plaintiff admitted the he decided not to respond to the request for additional information from GMAC.  (Birmingham 02/14/2008 Dep. at 179:05-15 (Ex. 3).)  Plaintiff also admitted that he did not know why GMAC requested the additional information or if it had anything to do with an Experian credit report.  *Id.* at 179:22-180:06.  Plaintiff has no evidence that he would have been denied the GMAC credit card if he had completed the application.

8.     Wachovia Credit Card

Plaintiff claims that sometime in 2005 Wachovia offered him a credit card at a higher interest rate than he believes he should have been offered.  (Birmingham 02/14/2008 Dep. at 70:09-71:18 (Ex. 3); Plaintiff's Response to Experian's Interrogatory No. 1 (Ex. 11).)  Again, Plaintiff admits that he does not know what the lender based its decision on when it offered him the credit card.  (Birmingham 02/14/2008 Dep. at 174:12-25 (Ex. 3)).[8]

---

[8]

| Q: | Did anyone from Wachovia tell you why you were offered that higher interest rate? |
|---|---|
| A: | No. |
| Q: | Did anyone ever tell you that it was because of an Experian credit report? |
| A: | No. |
| Q: | Did they tell you it was because of any credit report? |
| A: | No.  The subject never came up. |
| Q: | You never asked? |
| A: | No. |
| Q: | So you have assumed that the higher interest rate was because of the Verizon account? |
| A: | Correct. |

9.      Credit Opportunities

Plaintiff has also claimed that he missed some opportunities to invest in properties because he assumed he would not be able to get a low enough interest rate.  (Birmingham 02/14/2008 Dep. at 40:23-41:12 (Ex. 3).)  Consumers cannot obtain damages for lost opportunities under the FCRA where they did not apply for and were not denied credit.  *See e.g. Tinsley v. Transunion Corp.*, 879 F. Supp. 550, 552 (D. Md. 1995) (granting summary judgment for credit reporting agency and holding "Plaintiff's case similarly falters on the matter of damages; quite simply he has shown none.  He lost no . . . opportunity to refinance his home mortgage when he never made application for such."), *aff'd* 64 F.3d 659 (4th Cir. 1995), *cert. denied*, 516 U.S. 1047 (1996).[9]

**G.      Plaintiff Cannot Substantiate Any Damages For Emotional Distress**

Plaintiff also alleges in boilerplate fashion that he has suffered "emotional distress, embarrassment, mental anguish, anxiety, and humiliation." (Amended Complaint ¶¶ 58, 61, 112 (Doc. 2); Plaintiff's Resp. to Experian's Interrogatories No. 17, Ex. 11).  Though a consumer is not absolutely barred from recovering damages for emotional distress under the FCRA, he must present sufficient evidence of emotional distress to warrant such a recovery.  Because Plaintiff never adequately disputed the Verizon accounts to Experian, any emotional distress suffered by

---

(continued…)

(Birmingham 02/14/2008 Dep. at 174:12-25 (Ex. 3)) (*see also Id.* at 70:15-17 (Plaintiff admitting he does not know if the interest rate decision was based on a credit report).

[9] *See also Renninger v. Chexsystems*, No. 98 C 669, 1998 U.S. Dist. LEXIS 8528, *16 (N.D. Ill. May 22, 1998) (granting CRA's motion to dismiss, holding plaintiff's "contention that she was deterred from even applying for a mortgage (because of Equifax's inaccurate information) has been held to present too much speculative an injury to support an FCRA claim.") (attached as Ex. 13); *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 832 (E.D.N.Y. 1994) (granting summary judgment for CRA and holding "[i]t is undisputed that plaintiffs never submitted an application to refinance . . . and they therefore never were rejected for credit" and that plaintiffs' argument based on  the opinion of two mortgage brokers "that if they had submitted an application, it would have been denied, is entirely speculative.")

Plaintiff as a result of any alleged adverse credit actions cannot properly be attributed to Experian.  Moreover, there is no evidence that Plaintiff suffered any recoverable emotional damages due to Experian's reporting of the Verizon account.

A party seeking damages for emotional distress must present evidence of genuine injury, such as the evidence of the injured party's conduct and the observation by others.  *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001) (holding that plaintiff's testimony that he felt frustrated, upset, angry, and trapped after seeing inaccuracies on his credit report did not support an award of damages).  The evidence presented must have "a degree of specificity which may include corroborating testimony or medical or psychological evidence . . . ."  *Id.*

Plaintiff claims several medical conditions are the result of his "emotional distress, embarrassment, mental anguish, anxiety, and humiliation."  While Plaintiff has alleged that his allergies, gastroesophageal reflux, depression, stress, and anxiety are the result of the Verizon accounts being reported on his Experian credit report, he has offered no evidence other than his own assumptions.  (Birmingham 02/14/2008 Dep. at 194:22-198:12 (Ex. 3).)  Plaintiff admits that he has in fact never discussed the issues arising from the reporting of his Verizon accounts with his physicians and that that no medical professional has told him that his health complaints are related to the Experian credit report or the Verizon accounts.  *Id.*  Plaintiff further admits that even though he is a nurse, he is not qualified to make diagnoses, and that "only a physician can make a diagnosis."  *Id.* at 196:09-15.

There is no evidence to substantiate Plaintiff's empty claim that he sustained recoverable damages for emotional distress, beyond the conclusory allegations in his Amended Complaint and his self-serving deposition testimony and interrogatory responses.  Such allegations are

insufficient to survive summary judgment.  *See Cousin*, 246 F.3d at 370-71 (vacating trial court's award of damages for emotional distress because the only evidence was plaintiff's own testimony).[10]

Plaintiff's mental distress allegations are further flawed because Plaintiff must affirmatively establish that his severe emotional distress damages were properly attributable to Experian, rather than to any other cause, such as the creditor who provided the derogatory information or other potential sources of his emotional distress.  Plaintiff cannot establish any right to emotional distress damages because he has not substantiated such damages with a health care professional, nor can he provide any link between his alleged emotional distress and the conduct of Experian.  *Casella v. Equifax Credit Info. Serv.*, 56 F.3d at 474, 474. ("[Plaintiff] was not entitled to pain and suffering damages in his case, because he failed to show that his emotional distress was caused by [the credit reporting agency], as opposed to [the creditor].").  The absence of such evidence renders Plaintiff's claim for emotional distress damages deficient as a matter of law.  Accordingly, summary judgment in favor of Experian is appropriate.

## H.    Plaintiff's Claim for Punitive Damages Fails As A Matter of Law

Finally, Plaintiff's claim for punitive damages fails.  To prove willfulness, Plaintiff carries the heavy burden of showing that Experian acted in reckless disregard for the rights of others.  *Safeco Ins. Co. of America v. Burr*, 127 S. Ct. 2201, 2215-16 (2007).  The mere existence of inaccuracies on a credit report, "does not itself amount to an act in conscious disregard of [plaintiff's] rights supporting a finding of willful noncompliance." *Zahran v. Trans*

---

[10] *See also Wantz v. Experian Info. Solutions,* 386 F.3d 829, 833-34 (7th Cir. 2004) (finding that plaintiff's claim of mental and emotional distress from dealing with credit reporting agencies did not rise above the level of conclusory assertions); *Sutherland v. TRW, Inc.*, No. 94 C 6264, 1996 U.S. Dist. LEXIS 3320, at *28 (N.D. Ill. Mar. 20, 1996) (ruling that plaintiff's claims that she felt tense, lost sleep, and headaches were insufficient for recovery) (attached as Ex. 14).

*Union Corp.*, No. 01 C 1700, 2003 U.S. Dist. LEXIS 5089, at *21-23 (N.D. Ill. Mar. 31, 2003) (attached as Ex. 15).

There is no genuine issue of material fact in the instant matter because Plaintiff has no evidence of willful conduct.  On the occasions when Plaintiff provided sufficient identification to Experian and requested a copy of his consumer disclosure, Experian promptly provided the disclosure to Plaintiff.  (Hughes Decl. ¶¶ 12, 13, 14, 29, Ex. 1; Centanni Decl. 13, 14, 15, 30, Ex. 2.)  When Plaintiff sent a letter to Experian with insufficient identification information in order for Experian to initiate a reinvestigation, Experian promptly sent a letter to plaintiff to let him know what steps he would need to take to request a disclosure or dispute information in his credit file.  *Id.*  Such conduct proves that the defendant did not act with reckless disregard.  *See Safeco Ins. Co. of America*, 127 S. Ct. at 2216.  Thus, Plaintiff's unsubstantiated plea for punitive damages must be rejected.

## V.    CONCLUSION

As shown herein, Experian has fully complied with its obligations under the FCRA. Because Plaintiff has failed to demonstrate that Experian did not comply with the FCRA and because all the claims fail as a matter of law for lack of evidentiary support and for all of the other reasons discussed above, and because Plaintiff has not suffered any damages attributable to Experian's conduct, Experian respectfully requests that this Court enter summary judgment in Experian's favor and dismiss all claims against Experian with prejudice.

**Respectfully Submitted,**

Dated:        September 2, 2008.        **Young, Hoffman, Strassberg & Ensor, LLP**

By: _____/s_____ Richard F. Ensor_____

Richard F. Ensor (10877)
170 S. Main Street, Suite 1125
Salt Lake City, Utah  84101
Telephone: (801) 359-1900

JONES DAY
Dawn E. McFadden (*admitted pro hac vice*)
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939

Attorneys for Defendant Experian Information
Solutions Inc.

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served via Electronic CM/ECF Notification, this 2nd day of September 2008, upon the following:

<table>
<tr>
<td>

**ATTORNEY FOR PLAINTIFF**

Ronald Ady, PLLC
8 E. Broadway, Suite 710
Salt Lake City, Utah 84111
adyr@80law.com

</td>
<td>

**ATTORNEYS FOR DEFENDANT EQUIFAX INC.**

**SNELL & WILMER**
Mark O. Morris
Stewart O. Peay
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
mmorris@swlaw.com
speay@sw1aw.com

**KING & SPALDING LLP**
Lewis P. Perling
1180 Peachtree Street
Atlanta, Georgia 30309-3521
lperling@kslaw.com

</td>
</tr>
<tr>
<td>

**ATTORNEYS FOR THE VERIZON DEFENDANTS**

**DURHAM JONES & PINEGAR**
David L. Arrington
Steve K. Gordon
111 East Broadway, Suite 900
Salt Lake City, Utah 84111
SGordon@djplaw.com

</td>
<td>

**ATTORNEYS FOR DEFENDANT TRANS UNION LLC**

**COHNE, RAPPAPORT & SEGAL, P.C.**
Keith W. Meade
257 East 200 South, Suite 700
Salt Lake City, Utah 84111
keith@crslaw.com

**MUSICK, PEELER & GARRETT, LLP**
Donald E. Bradley
650 Town Center Drive, Suite 1200
Costa Mesa, California 92626-1925
c.battersby@mpglaw.com
d.bradley@mpglaw.com

</td>
</tr>
</table>

_____/s____Richard F. Ensor_____
Attorneys for Defendant
Experian Information Solutions, Inc.