Richard F. Ensor (10877)
YOUNG, HOFFMAN, STRASSBERG & ENSOR, LLP
170 S. Main Street, Suite 1125
Salt Lake City, Utah 84101
(801) 359-1900

Dawn E. McFadden (*pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939

Counsel for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RAY BIRMINGHAM,<br><br>*Plaintiff,*<br><br>v.<br><br>EQUIFAX, INC.; et al.,<br><br>*Defendants.* | EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT<br><br>Civil No. 2:06-cv-00702 BSJ<br><br>**Judge Bruce S. Jenkins** |

## DECLARATION OF KIMBERLY HUGHES

I, Kim Hughes, declare and state as follows:

1.     I am a Consumer Affairs Specialist Consultant in the National Consumer Assistance Center of Experian Information Solutions, Inc. ("Experian"), located in Allen, Texas. I have been so employed by Experian since July 2000. I began my employment with Experian as

a Customer Service Representative in 1997. My general responsibilities include processing, responding and examining consumer complaints; verifying and updating consumers' credit profile disputes; and researching records regarding Experian subscribers relating to consumer complaints.

2. Based upon my experience with Experian, I am very familiar with Experian's procedures pertaining to consumer disputes, Experian's procedures related to its credit disclosures, and with the business records maintained by Experian's credit reporting division. All documents referenced herein were kept by Experian in Experian's ordinary course of business or were produced by the Plaintiff. The facts set forth herein are based upon my personal knowledge, and information available to me in the above referenced capacity, and if I were called upon to testify to them, I could and would competently do so.

3. Experian operates a consumer credit reporting agency. As a consumer credit reporting agency, Experian acts as a conduit for credit information on various consumers that is pertinent to prudent credit granting and related decisions. Experian receives and stores credit information originated by others and makes that information available to parties engaged in credit related transactions. Thus, Experian does not originate or create any credit information and Experian does not make loans or decide who should receive credit. Both of those functions are handled entirely by the credit granting industry, over which Experian has no control.

4. Experian essentially acts as a storehouse of credit information by storing, retrieving, and furnishing data. Credit grantors report credit information to Experian, which is identified as "trade lines" that consist of credit account information such as account number, account status, payment, and balance information. In addition to the trade line information,

credit grantors also report certain consumer identifying information that is associated with the trade line.

5. A "credit report" is a disclosure of credit information to a credit grantor for the purpose of evaluating a consumer's credit. In contrast, when a consumer seeks access to his or her credit information directly from a credit reporting agency, the resulting document is called a "file disclosure." Experian tracks each time that a consumer who provides the necessary identification requests a copy of their consumer file or disputes an account, whether that request is by phone, via the internet or by mail.

6. Experian has extensive procedures for assuring the maximum possible accuracy of reported credit information. These procedures include working with consumers to proactively prevent errors in consumer disclosures. Moreover, with the increase of consumer fraud and identity theft, Experian has implemented a series of policies and procedures designed to protect against consumer fraud. Included in these procedures is the requirement that sufficient identifying information be provided before Experian takes any action regarding a consumer's file, whether the action is requested by a consumer, creditor, or public agency.

7. Experian has developed detailed procedures for providing consumers with access to their credit files and means to request reinvestigations if they disagree with items appearing in their credit reports or consumer disclosures. Experian has also implemented several procedures designed to involve the consumers who are the subjects of the credit reports and consumer disclosures produced by Experian in the overall process that assures the maximum possible accuracy of such reports.

8. Consumers who disagree with the accuracy or completeness of any items of credit information that are reported in their file disclosure (or in a consumer credit report provided to a

credit grantor) may submit disputes of those items to Experian. As a normal course of business, Experian actively encourages consumers to request file disclosures, review them, and submit disputes of any items believed to be inaccurate or incomplete in order to assure that the information reported by Experian is as accurate as possible.

9. Experian reinvestigates disputed items generally by contacting the sources of the disputed information, explaining the consumer's disputes, and requiring a response concerning the accuracy of the disputed items. When a consumer provides the necessary identification information and disputes an item on his credit report or consumer disclosure, Experian sends (either manually or electronically) the creditor a "Consumer Dispute Verification" ("CDV"). The CDV provides the creditor with the consumer's identifying information as well as the basis for his dispute and requires the creditor to research the information reported. The creditor returns the CDV, providing Experian with instructions to leave the item as it is (because it was "verified as reported"), to delete the item, or to change (or update) it in some specified manner. Experian acts accordingly, and then sends the consumer a consumer disclosure reflecting the results of the reinvestigation. Consequently, it is necessary for the consumer to specifically identify the item or items they are disputing and explain the nature of the dispute because Experian is unable to determine why a consumer disagrees with information that Experian is reporting without such information. Experian's system tracks every time that a consumer who provides the necessary identification requests a copy of their consumer file or disputes an account, whether that request is by phone, via the internet or by mail.

10. At the conclusion of the investigation, consumers are advised of the results of Experian's investigation. Results of an investigation typically are reported by sending the consumer a summary reflecting the status of the items disputed following Experian's

investigation. The summary also contains a statement regarding procedures the consumer may follow if the consumer disagrees with the results of the investigation, including contacting directly the furnisher of the disputed information and adding a statement to the consumer's credit file disputing the accuracy or completeness of the disputed account.

11.  It is my understanding that Plaintiff's claims against Experian stem from Experian's reporting and investigation of two "Verizon Wireless" accounts.

12.  On November 23, 1998, Plaintiff contacted Experian by telephone to request a complimentary copy of his personal consumer disclosure based on an alleged recent denial of credit. On the same day, Experian sent Plaintiff a copy of his personal consumer disclosure.

13.  On October 20, 2000, Plaintiff contacted Experian by telephone to request a complimentary copy of his personal consumer disclosure based on an alleged recent denial of credit. On the same day, Experian sent Plaintiff a copy of his personal consumer disclosure.

14.  On December 1, 2003, Plaintiff contacted Experian by telephone to request a complimentary copy of his personal consumer disclosure based on possible fraudulent activity and to add an initial security alert. On the same day, Experian sent Plaintiff a copy of his personal consumer disclosure.

15.  In Plaintiff's December 1, 2003 consumer disclosure, Experian notified Plaintiff that at his request, a fraud security alert had been added to his personal consumer discolsure, and that alert would remain on his credit file for 90 days. Experian also notified what steps Plaintiff needed to take to add a fraud victim statement to his credit file that would remain on his credit file for seven years. Plaintiff did not take the necessary steps to add the fraud victim statement to his file.

16. In Plaintiff's December 1, 2003 consumer disclosure, Experian explained to Plaintiff how to dispute any account that appears as the result of fraudulent activity. Plaintiff did not dispute any accounts with Experian at that time.

17. On January 21, 2005 Experian was notified by another Credit Reporting Agency ("CRA") that Plaintiff had contacted them regarding possible fraudulent activity. Experian communicated to the Plaintiff in writing alerting him that another CRA had requested that Experian add an Initial Security Alert to Plaintiff's credit file at Plaintiff's Request. Experian notified Plaintiff that the Initial Security Alert had been added and would remain on his file for 90 days.

18. In the January 21, 2005 letter Experian notified Plaintiff how he could request a free copy of his consumer disclosure by going to Experian's secure web site, or, if he wanted to request a copy of his disclosure by mail, he should provide identifying information including his full name, previous address for the last two years, Social Security number, date of birth and current address.

19. In the January 21, 2005 letter Experian provided additional information about identity theft, and the steps he could take to help prevent identity theft.

20. Experian has no record of sending the Plaintiff a consumer disclosure in January or February of 2005.

21. Attached as Exhibit 8 to Experian's Memorandum of Law in Support of its Motion for Summary Judgment is a true and correct copy of the letter purportedly sent by the Plaintiff to Experian dated July 20, 2005 that Plaintiff has produced during the course of this litigation. This letter does not contain sufficient identification information for Experian to begin a reinvestigation, based on Experian's policies and procedures.

22. On July 27, 2005 Experian sent the Plaintiff a letter alerting him that a letter that he had sent to Experian did not contain sufficient identification information for Experian to process his request.

23. In the July 27, 2005 letter Experian notified Plaintiff what information he would need to provide in order for Experian to investigate any disputes. Experian asked Plaintiff to provide identifying information including his full name, previous address for the last two years, Social Security number, date of birth and current address.

24. Experian never received a response from Plaintiff regarding Experian's July 27, 2005.

25. Experian has no record of Plaintiff ever disputing any information from his credit file.

26. Experian has no record of sending the Plaintiff a consumer disclosure in July or August of 2005.

27. On August 1, 2005 Experian was carbon copied on a response by Verizon Wireless – West to Equifax requesting an update be made to their account being reported on Plaintiff's credit file adding Compliance Condition Code XC; "Completed Invest of FCRA Disp – Cons Disagrees." Experian added the Compliance Condition Code, causing the aforementioned statement to display.

28. On August 3, 2005 Experian was carbon copied twice by Verizon Wireless – West on responses to Trans Union requesting updates be made to the Verizon Wireless – West accounts. Since both requests were to add the Compliance Condition Code XC which had already been completed on August 1, 2005 update the transactions were closed with no action taken.

29. On May 3, 2006, Plaintiff contacted Experian via the internet to request a copy of his personal consumer disclosure. On the same day, Experian sent Plaintiff a copy of his consumer disclosure.

30. In order to ensure that it is sending consumer disclosures and results of investigations to the correct individual, it is Experian's procedure to send a letter to a consumer who requests his consumer report or an investigation but does not provide a Social Security number or provides an address that has never been reported to Experian by any credit grantor. This letter states that verification of the consumer's identity and current mailing address is required in order for Experian to initiate an investigation and send the results of the investigation to the address supplied by the consumer. In particular, the letter sent to consumers notifies them that they need to provide their Social Security number and verification of their current mailing address (for example, a copy of a driver's license, current utility bill, bank or insurance statement, etc.) in order for Experian to verify the identity of the consumer and ensure that confidential credit information is being sent to the correct individual.

31. Experian sent such a notice to Plaintiff on July 27, 2005, stating Experian could not process Plaintiff's request without Plaintiff's complete identification information.

32. Experian followed reasonable procedures to ensure the maximum possible accuracy of the information contained in Plaintiff's Experian credit file and to protect the integrity of Plaintiff's Experian credit file.

33. Experian acted with no malice toward Plaintiff.

34. Attached to the Appendix of Exhibits as Exhibit 16 is a true and correct copy of Plaintiff's November 23, 1998 consumer disclosure.

35. Attached to the Appendix of Exhibits as Exhibit 17 is a true and correct copy of Plaintiff's October 20, 2000 consumer disclosure.

36. Attached to the Appendix of Exhibits as Exhibit 18 is a true and correct copy of Plaintiff's December 1, 2003 consumer disclosure.

37. Attached to the Appendix of Exhibits as Exhibit 19 is a true and correct copy of Plaintiff's May 3, 2006 consumer disclosure.

38. Attached to the Appendix of Exhibits as Exhibit 7 is a true and correct copy of the letter Experian sent to Plaintiff on or about January 21, 2005.

39. Attached to the Appendix of Exhibits as Exhibit 9 is a true and correct copy of the letter Experian sent to Plaintiff on or about July 27, 2005, as the document was produced by the Plaintiff.

This declaration is executed under penalty of perjury, pursuant to 28 U.S.C. § 1746, on August 26, 2008 in Allen, Texas.

*Kimberly Hughes* (signature)
Kimberly Hughes