Richard F. Ensor (10877)
YOUNG, HOFFMAN, STRASSBERG & ENSOR, LLP
170 S. Main Street, Suite 1125
Salt Lake City, Utah 84101
(801) 359-1900

Dawn E. McFadden (*pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939

Counsel for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RAY BIRMINGHAM,<br><br>    *Plaintiff*,<br><br>v.<br><br>EQUIFAX, INC.; et al.,<br><br>    *Defendants.* | EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT<br><br>**Civil No.** 2:06-cv-00702 BSJ<br><br>**Judge Bruce S. Jenkins** |

DECLARATION OF KATHLEEN M. CENTANNI

I, Kathleen M. Centanni, declare and state as follows:

1.  Since May 2003, I have been employed as a Compliance Manager for Experian Information Solutions, Inc. ("Experian"), formerly known as TRW Information Systems ("TRW"). From August 2000 to May 2003, I held the position of Internal Auditor and Internal Auditor Senior in Experian's Internal Audit Department. I began my career with TRW/Experian in September 1990 as Credit and Collection Manager. Based on my experience, I am

knowledgeable about Experian's policies and procedures for the compilation, retention, reinvestigation and disclosure of consumer credit information. I also have reviewed thousands of credit reports, and as a result I have substantial knowledge about common patterns that occur in the way consumers identify themselves when applying for credit. The facts stated in this declaration are true of my own personal knowledge, and if called to testify to them, I would competently do so.

2. I make this declaration in support of Experian's Motion for Summary Judgment.

3. Experian operates a consumer credit reporting agency pursuant to the Federal Fair Credit Reporting Act ("FCRA"). As a credit reporting agency, Experian acts as a conduit for credit information that is pertinent to prudent credit granting and related decisions. Experian receives and stores credit information originated by others and makes that information available to parties engaged in credit related transactions. Thus, Experian does not originate or create any credit information and Experian does not make loans or decide who should receive credit. Both of these functions are handled entirely by the credit granting industry, over which Experian has no control.

4. Credit grantors report credit information to Experian which is identified as "trade lines" that consist of account information such as account number, account status, and balance information. In addition to the trade line information, credit grantors also report certain consumer identifying information which is associated with the trade line. Experian's computer system does not store any completed credit reports; rather, the system stores trade lines that are linked to identifying information supplied by credit grantors. Experian acts as a repository for the tens of thousands of credit grantors who report information on their dealing with consumers.

5.  After the credit data is received by Experian and before it is added to Experian's credit files, the information is subjected to rigorous quality control and statutory compliance procedures to ensure that only accurate information is reported. Automated procedures are designed to make certain that no information that would violate the prescriptions of the FCRA or similar state statutes will be reported on any consumer's credit report. A "credit report" is a disclosure of credit information to a credit grantor for the purpose of evaluating a consumer's credit. In contrast, when a consumer seeks access to his or her credit information directly from a credit reporting agency, the resulting document is called a "consumer disclosure."

6.  Experian has extensive procedures for assuring maximum possible accuracy of reported credit information. These procedures include: (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information Experian reports; and (4) working with consumers to proactively prevent errors in consumer credit reports. Moreover, with the increase of consumer fraud and identity theft, Experian has implemented a series of policies and procedures designed to protect against consumer fraud. Included in these procedures is the requirement that sufficient identifying information be provided before Experian takes any action regarding a consumer's file, whether the action is requested by a consumer, creditor, or public agency.

7.  In addition to the procedures described above, Experian has developed many other procedures to assure maximum possible accuracy. These include the procedures followed for the processing of information reported to Experian by creditors. In order to report credit information to Experian, a credit grantor must pass a thorough membership due diligence process

and execute appropriate contracts. Experian only accepts consumer credit information from sources that it considers to be reliable reporters of such information. Additionally, Experian has also built into its computer system an extensive range of checks and balances which are designed to detect as many potential errors as possible. These checks detect anomalies by creating individual credit grantor profiles depicting how individual lenders have reported data to Experian over the most recent prior three months.

8.   Of necessity, Experian's validation of consumer credit information, is unable to extend to conducting an independent review with respect to each account being reported, nor is it required to under the FCRA. On a daily basis, Experian received in excess of fifty million new account information or updates.

9.   Experian has developed detailed procedures for providing consumers with access to their credit files and means to request reinvestigations if they disagree with items appearing in their credit files. Experian has a toll-free number so that consumers can ask questions, request a personal credit report and/or request an investigation of their credit report. Experian implemented several procedures designed to involve the consumers who are the subjects of the credit reports produced by Experian in the overall process that assures the maximum possible accuracy of such reports. Consumers who disagree with the accuracy or completeness of any items of credit information reported in their credit file can submit disputes of those items directly to Experian. As a normal course of business, Experian actively encourages consumers to request file disclosures, review them, and submit disputes of any items claimed to be inaccurate or incomplete in order to assure that the information reported by Experian is as accurate as possible.

10.   Experian reinvestigates disputed items generally by contacting the sources of the disputed information, explaining the consumer's disputes, and requiring a response concerning

the accuracy of the disputed items. When a consumer provides the necessary identifying information and disputes an item on his credit report, Experian sends (either manually or electronically) the creditor a "Consumer Dispute Verification" ("CDV"). The CDV provides the creditor with the consumer's identifying information as well as the basis for his dispute and requires the creditor to "research" the information reported. The creditor returns the CDV to Experian, providing Experian with instructions to leave the item as it is (because it was "verified as reported"), to delete the item, or to change it in some specified manner. Experian acts accordingly, and then sends the consumer a consumer disclosure reflecting the results of the reinvestigation. Consequently, it is necessary for the consumer to specifically identify the item or items they are disputing and explain the nature of the dispute because Experian is unable to determine why a consumer disagrees with information that Experian is reporting without such information. Experian's system was developed to track each time that a consumer who provides the necessary identification requests a copy of their consumer file or disputes an account, whether that request is by phone, via the internet or by mail.

11. Experian does not have access to creditors' records. Furthermore, any assumption on Experian's part would be arbitrary and would jeopardize the integrity of the information within Experian's system.

12. At the conclusion of a reinvestigation, consumers are advised of the results of Experian's reinvestigation and of other consumer rights with respect to the dispute process. Results of a reinvestigation typically are reported by sending the consumer a copy of his or her disclosure reflecting the status of the items disputed following Experian's reinvestigation, often with explanatory comments at the end of the file disclosure.

13. On November 23, 1998, Plaintiff contacted Experian by telephone to request a complimentary copy of his personal consumer disclosure based on an alleged recent denial of credit. On the same day, Experian sent Plaintiff a copy of his personal credit report.

14. On October 20, 2000, Plaintiff contacted Experian by telephone to request a complimentary copy of his personal consumer disclosure based on an alleged recent denial of credit. On the same day, Experian sent Plaintiff a copy of his personal credit report.

15. On December 1, 2003, Plaintiff contacted Experian by telephone to request a complimentary copy of his personal consumer disclosure based on possible fraudulent activity and to add an initial security alert. On the same day, Experian sent Plaintiff a copy of his personal credit report.

16. In Plaintiff's December 1, 2003 credit disclosure, Experian notified Plaintiff that at his request, a fraud security alert had been added to his personal credit report, and that alert would remain on his credit file for 90 days. Experian also notified Plaintiff as to what steps Plaintiff needed to take to add a fraud victim statement to his credit file which would remain on his credit file for seven years. Plaintiff did not take the necessary steps to add the fraud victim statement to his file.

17. In Plaintiff's December 1, 2003 credit disclosure, Experian explained to Plaintiff how to dispute any account that appears as the result of fraudulent activity. Plaintiff did not dispute any accounts with Experian at that time.

18. On January 21, 2005 Experian was notified by another Credit Reporting Agency ("CRA") that Plaintiff had contacted them regarding possible fraudulent activity. Experian communicated to the Plaintiff in writing alerting him that another CRA had requested that Experian add an Initial Security Alert to Plaintiff's credit file at Plaintiff's Request. Experian

notified Plaintiff that the Initial Security Alert was added and would remain on his file for 90 days.

19. In the January 21, 2005 letter Experian notified Plaintiff how he could request a free copy of his credit report by going to Experian's secure web site, or, if he wanted to request a copy of his disclosure by mail, he should provide identifying information including his full name, previous address for the last two years, Social Security number, date of birth and current address.

20. In the January 21, 2005 letter Experian provided additional information about identity theft, and the steps Plaintiff could take to help prevent identity theft.

21. Experian has no record of sending the Plaintiff a consumer disclosure in January or February of 2005.

22. Attached as Exhibit 8 to Experian's Memorandum of Law in Support of its Motion for Summary Judgment is a true and correct copy of the letter purportedly sent by the Plaintiff to Experian dated July 20, 2005 that Plaintiff has produced during the course of this litigation. This letter does not contain sufficient identification information for Experian to begin a reinvestigation, based on Experian's policies and procedures.

23. On July 27, 2005 Experian sent the Plaintiff a letter alerting him that a letter that he had sent to Experian did not contain sufficient identification information for Experian to process his request.

24. In the July 27, 2005 letter Experian notified Plaintiff what information he would need to provide in order for Experian to investigate any disputes. Experian asked Plaintiff to provide identification information including his full name, previous address for the last two years, Social Security number, date of birth and current address.

25. Experian never received a response from Plaintiff regarding Experian's July 27, 2005.

26. Experian has no record of Plaintiff ever disputing any information from his credit file.

27. Experian has no record of sending the Plaintiff a consumer disclosure in July or August of 2005.

28. On August 1, 2005 Experian was carbon copied on a response by Verizon Wireless – West to Equifax requesting an update be made to their account being reported on Plaintiff's credit file adding Compliance Condition Code XC; "Completed Invest of FCRA Disp – Cons Disagrees." Experian added the Compliance Condition Code.

29. On August 3, 2005 Experian was carbon copied twice by Verizon Wireless – West on responses to Trans Union requesting updates be made to the Verizon Wireless – West accounts. Since both requests were to add the Compliance Condition Code XC which had already been completed on August 1, 2005 update the transactions were closed with no action taken.

30. On May 3, 2006, Plaintiff contacted Experian via the internet to request a copy of his personal consumer disclosure. On the same day, Experian sent Plaintiff a copy of his consumer disclosure.

31. In order to ensure that it is sending consumer disclosures and results of investigations to the correct individual, it is Experian's procedure to send a letter to a consumer who requests his consumer report or an investigation but does not provide a Social Security number or provides an address that has never been reported to Experian by any credit grantor. This letter states that verification of the consumer's identity and current mailing address is

required in order for Experian to initiate an investigation and send the results of the investigation to the address supplied by the consumer. In particular, the letter sent to consumers notifies them that they need to provide their Social Security number and verification of their current mailing address (for example, a copy of a driver's license, current utility bill, bank or insurance statement, etc.) in order for Experian to verify the identity of the consumer and ensure that confidential credit information is being sent to the correct individual.

32. Experian sent such a notice to Plaintiff on July 27, 2005, stating Experian could not process Plaintiff's request without Plaintiff's complete identification information.

33. Experian followed reasonable procedures to ensure the maximum possible accuracy of the information contained in Plaintiff's Experian credit file and to protect the integrity of Plaintiff's Experian credit file.

34. Experian acted with no malice toward Plaintiff.

This declaration is executed under penalty of perjury, pursuant to 28 U.S.C. § 1746, on August 26, 2008 in Allen, Texas.

*Kathleen M. Centanni*
Kathleen M. Centanni